UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

TROY ANTHONY MORROW,

                Petitioner,

   v.

BRIAN E. WILLIAMS, SR., *et al.*,

                Respondents.

Case No. 3:17-cv-00580-MMD-CLB

ORDER

Troy Anthony Morrow's *pro se* 28 U.S.C. § 2254 petition for writ of habeas corpus is before the Court for final disposition on the merits (ECF No. 4).

I.   **PROCECURAL HISTORY AND BACKGROUND**

    **A.   Procedural History**

A jury convicted Morrow of burglary and grand larceny in August 2012 (Ex. 26).[1] The convictions stemmed from Morrow's theft of electronics from a Las Vegas Walmart. (Exh. 24.) At the time he was working as a confidential police informant in an operation targeting ex-felons selling firearms and individuals in possession of dynamite grenades. At a detective's request, Morrow was initially released and then was arrested for the incident several months later.

The state district court adjudicated Morrow a large habitual criminal and sentenced him to two concurrent terms of 10 years to life. (Exh. 38.)

The Nevada Supreme Court affirmed Morrow's convictions in 2014, and the Nevada Court of Appeals affirmed the denial of his state postconviction petition in 2016. (Exhs. 44, 71.)

///

---

[1]Exhibits referenced in this order are exhibits to Respondents' motion to dismiss, ECF No. 9, and are found at ECF Nos. 10-15.

The remaining two grounds in Morrow's federal petition are claims of ineffective assistance of counsel (ECF No. 4). Respondents have answered the remaining grounds, and Morrow has replied (ECF Nos. 34, 38).

### B.    Pertinent Trial Testimony

At the August 2012 jury trial, the Walmart asset protection agent from the store in question testified. (Exh. 24, pt. 1, at 9-87.) She stated that she was monitoring the store via cameras and saw Morrow enter the store with three packs of pencils and get a sticker from a greeter marked "3" in order to return those items. A few minutes later she saw Morrow in the electronics department with a shopping cart. She continued to watch him. When he left the store with a home theater system, a Blu-Ray DVD player and a DVD player, the Walmart management team approached him and brought him back into the store. She asked Morrow what he was doing. He admitted to taking the items. She told him she was calling the police, and he told her that "he wasn't going to go to jail because he knows too many people." *Id.* at 26. The State showed the surveillance video from the incident and had the asset protection agent describe what the video depicted as it played.

On cross-examination the asset protection agent stated that she saw Morrow take the electronic items off the shelf but conceded that the surveillance video did not show Morrow taking anything off the shelves, nor did it show Morrow walk into Walmart with any items.

Las Vegas Metro Detective Dale Anderson also testified. (Exh. 24, pt. 2, at 10-28.) Anderson confirmed that at the time of his arrest Morrow was working with Anderson as a confidential informant ("CI"). Anderson stated that he works as an undercover detective and that Morrow's function was to introduce Anderson to ex-felons with guns and dynamite grenades that were looking to sell them. Anderson stated that when the arresting officer, Matthew Carter, called him, Anderson confirmed that Morrow was a CI and told Carter that if there was any way possible that he could let Morrow go, that Anderson would appreciate it. Anderson agreed on cross-examination that, depending on

the circumstances, if a confidential informant refused to participate in something illegal, that that might be a tip-off to the people he is informing police about that something might not be right. Anderson testified that he never instructed Morrow to commit a burglary or grand larceny at a Walmart or anywhere else. He also stated that he encouraged Morrow to advance the firearms investigation and that he gave Morrow specific instruction as to what not to do.

Officer Carter testified similarly that Morrow told him he was a CI, that Carter called Anderson to confirm, and that Anderson requested that he release Morrow. Carter also stated that Morrow told him that he was teaching a guy how to steal expensive items. (Exh. 24, pt. 1, at 89-100; Exh. 24, pt. 2 at 1-10.)

## II.     LEGAL STANDARDS

### A.     AEDPA Standard of Review

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), provides the legal standards for the Court's consideration of the Petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with

[Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding

4

was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *See Cullen*, 563 U.S. at 181.

### B.    Ineffective Assistance of Counsel

Ineffective assistance of counsel ("IAC") claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *See Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *See id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See id.* A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466

U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *See id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *See Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997),

6

and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 124. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

**III.    DISCUSSION**

**A.    Grounds 1(b) and 2(b)**

Morrow contends that his trial counsel was ineffective for failing to object when Morrow was never arraigned (2(b)) and that his appellate counsel failed to argue that Morrow did not enter a plea or otherwise was not arraigned in state district court (1(b)). (ECF Nos. 4, 34.)

The record reflects the following pre-trial proceedings. Morrow appeared for a preliminary hearing in Justice Court in June 2011, but the hearing was continued at Morrow's request to allow him time to review the discovery. (Exh. 1.) On July 25, 2011, Morrow was present with counsel and unconditionally waived his right to a preliminary hearing. (Exh. 2.) His counsel informed the court that a plea deal had been negotiated and that Morrow would plead guilty to one count of burglary with a stipulation to habitual criminal treatment and a term of 7 to 20 years. (*Id.*) Morrow's August 1, 2011 arraignment was continued, and at his August 10 and August 22, 2011 arraignment hearings, Morrow asked for more time to consult with counsel. (Exhs. 5, 6, 8.) At a September 6 hearing, the parties told the court that they were still negotiating. (Exh. 10.) The court set Morrow's trial date for November 7, 2011.

At a November 3, 2011 calendar call, the parties informed the court that they were still negotiating. (Exh. I to Exh. 56, pt. 1 at 8-21.) Morrow was present, and defense counsel told the court that the negotiations included stipulating to habitual criminal treatment and a term of 7 to 20 years. The court explicitly discussed with Morrow that if the parties did not reach a deal, the State would seek large habitual criminal treatment, which carried possible sentences of life without the possibility of parole, life with the possibility of parole after 10 years, or a term of 10 to 25 years. Morrow acknowledged that he was "well aware" of the potential sentences. (*Id.* at 16.) He also told the court that the reality was that he needed to take a deal in order to avoid a possible life sentence. The court continued the case for a status check/calendar call on March 8, 2012. (Exh. 13.)

The negotiations ultimately fell through, and at a July 19, 2012 calendar call the parties announced they were ready for trial. (Exh. 17.) At a hearing on July 26, 2012, the State confirmed that it was leaving a plea offer open for Morrow so that he could review the offer and a surveillance tape with defense counsel. (Exh. 19.) Morrow appeared with counsel at a hearing on July 30, 2012, and defense counsel confirmed that Morrow rejected the State's final plea offer. (Exh. 21.)

On state postconviction review, the Nevada Court of Appeals affirmed the denial of the claim that trial counsel was ineffective for failing to argue that Morrow was never formally arraigned:

> Morrow argues the district court erred by denying his claim trial counsel was ineffective for failing to object when the district court failed to conduct an arraignment as required by NRS 174.015. Although Morrow was not formally arraigned, the record reveals he was fully aware of the criminal charges and the possibility of a habitual criminal adjudication if he proceeded to trial and lost. It further reveals his arraignment was continued several times so he could pursue plea negotiations. Because the record does not demonstrate Morrow was prejudiced by counsel's failure to object to the absence of a formal arraignment, we conclude the district court did not err in rejecting this claim.

///

(Exh. 71 at 2.)

With respect to Morrow's claim that appellate counsel was ineffective for failing to challenge the fact that Morrow was not arraigned, the Nevada Court of Appeals stated:

> The district court found that any attempt made by counsel to raise this issue on appeal would have been futile because a defendant waives his right to formal arraignment by proceeding to trial without objecting to the absence of a plea. The record supports the district court's finding and we conclude the district court did not err in rejecting this claim.

(*Id.* at 3.)

While the record reflects that Morrow was never formally arraigned, it also reflects that arraignment proceedings were continued several times while the parties negotiated, and that Morrow waived his right to a preliminary hearing. He was also clearly aware of the charges and possible sentences. He has failed to demonstrate that the Nevada Court of Appeal's decisions were contrary to or involved an unreasonable application of *Strickland. See* 28 U.S.C. § 2254(d). Federal habeas relief is denied as to grounds 1(b) and 2(b).

## B.    Ground 2(a)

Relatedly, Morrow contends that trial counsel failed to advise him that he could be sentenced under the habitual criminal sentence if he lost at trial. (ECF No. 4 at 39-40.)

The Nevada Court of Appeals rejected this claim:

> Morrow argues the district court erred by denying his claim trial counsel was ineffective for failing to advise him that sentencing under the large habitual criminal statute was a possible consequence of proceeding to trial and losing. Morrow further asserts the district court erred by not conducting an evidentiary hearing on this claim. However, the district court found Morrow's claim was belied by the record, the record supports the district court's finding, and the record reveals Morrow was fully informed of the consequences he would face by going to trial. Therefore, we conclude the district court did not err in rejecting this claim without conducting an evidentiary hearing. *See Hargrove v. State*, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984) (holding a petitioner is not entitled to an evidentiary hearing or relief where his claims are belied by the record).

9

(Exh. 71 at 4.)

As set forth above with respect to grounds 1(b) and 2(b), this claim is belied by the record. Morrow has not demonstrated that the Nevada Court of Appeal's decision was contrary to or involved an unreasonable application of *Strickland*. *See* 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 2(a).

### C.    Grounds 1(c) and 2(c)

Morrow contends that his trial counsel was ineffective for failing to provide an additional jury instruction on the burden of proof for a public authority defense (2(c)) and that appellate counsel was ineffective for failing to raise the burden of proof challenge on appeal (1(c)). (ECF Nos. 4, 34.)

Morrow's theory of defense at trial was that when he entered Walmart and attempted to leave without paying for several electronics, he was acting in his capacity as a confidential informant for law enforcement. (Exh. 24, pt. 3, at 3-9.) The trial court instructed the jury:

> If you find that Mr. Morrow was acting or reasonably believed he was acting on behalf of a law enforcement agency or officer when he engaged in the conduct charged in counts 1 and 2 of the indictment, then you must acquit him of these charges.

(Exh. 25, instruction no. 21.)

The State argued in closing that the defense bore the burden of proving the affirmative defense that Morrow reasonably believed he was acting on behalf of law enforcement by a preponderance of the evidence. (Exh. 24, pt. 3 at 10-11.)

The Nevada Court of Appeals rejected Morrow's argument that trial counsel was ineffective for failing to provide an additional jury instruction on the burden of proof for a public authority defense and that appellate counsel was ineffective for failing to raise this issue on appeal:

> Morrow argues the district court erred by denying his claim trial counsel was ineffective for failing to offer a jury instruction on the burden of proof for the public authority defense modeled after the burden of proof for the procuring agent defense described in *Love v. State*. *See Love v. State*, 893 P.2d 376,

379 (Nevada 1995) (holding the defendant does not have the burden to prove the procuring agent defense), overruled on other grounds by *Adam v. State*, 261 P.3d 1063 (Nevada 2011).[2] The district court found such an offer would have been futile.

On direct appeal, Morrow alleged the district court erred by failing to instruct the jury on the necessary burden of proof for the public authority defense. The Nevada Supreme Court rejected the claim, concluding "[e]ven assuming that Nevada recognizes the public authority defense . . . no prejudice resulted from the deficiencies in the instruction appellant identifies considering the substantial evidence supporting appellant's convictions". . . . In light of the Nevada Supreme Court's conclusion, Morrow cannot demonstrate he was prejudiced by counsel's failure to offer a burden-of-proof instruction and, therefore, the district court did not err in rejecting this claim.

. . . .Morrow [also] argues that the district court erred by denying his claim appellate counsel was ineffective for failing to incorporate *Love* into the burden-of-proof issue he presented on appeal. The district court found the jury was properly instructed on the State's burden of proof. Because the record supports its finding and the Nevada Supreme Court concluded Morrow was not prejudiced by any possible deficiencies in the instruction given, Morrow cannot demonstrate that incorporating *Love* into the burden-of-proof issue would have improved the issue's probability of success on appeal. Therefore, we conclude the district court did not err in rejecting this claim.

(Exh. 71 at 3-4.)

Detective Anderson testifed at trial that Morrow was working for him as a confidential informant related to illegal firearm and grenade sales. However, he also testified:

Q: Is it normal for detectives to let confidential informants get away with shoplift/burglaries while they're working as a confidential informant?

_____

[2]In *Love*, the Nevada Supreme Court held that the trial court erred when it failed to instruct a jury that the State bore the burden of disproving defendant's procuring agent defense and in instructing the jury that the procuring agent defense does not apply unless the drug sale is initiated by a police informant. *See* 893 P.2d at 378. The state supreme court discussed that it had previously established that the procuring agent defense in a prosecution for a sale of a controlled substance can be maintained only if the defendant was merely a conduit for the purchase and in no way benefited from the transaction. *See id.* Even if the procuring agent defense set out in *Love* extends to other illegal activity, this Court notes that such a defense is not really "on all fours" with Morrow's theory of defense here.

11

A: I wouldn't call it get away with.

Q: Well, how would you describe it then?

A: Well, he didn't get away with it; it was just a charge or a case that we held. He didn't get away with it.

Q: What do you mean by that?

A: That means it's something that Mr. Morrow did that we didn't arrest him for that night. He could be arrested for it later, and that's what happened. I submitted for an arrest warrant at a later date. . . .

Q: . . . . – as part of his work as a CI were you – was [Morrow] ever instructed or asked to go commit a burglary or grand larceny at a Walmart or any other store?

A: Absolutely not.

(Exh. 24, p. 2, at 14, 28.)

The Walmart asset protection agent testified that she observed Morrow take the items from the store. Officer Carter testified that Morrow told him he was teaching another individual how to steal large-ticket items. Detective Anderson testified that he never told Morrow to take anything from a store as part of his role as a confidential informant related to illegal firearm sales. In light of the substantial evidence introduced at trial, Morrow has not shown that the Nevada Court of Appeals' decisions on these trial and appellate IAC claims were contrary to or involved an unreasonable application of *Strickland*. *See* 28 U.S.C. § 2254(d). Grounds 1(c) and 2(c) are, therefore, denied.

**D.      Ground 1(a)**

Morrow asserts that his appellate counsel was ineffective because counsel failed to challenge statements made by the prosecution during voir dire. Morrow argues these statements deprived him of his Fourteenth Amendment right to a fair trial. (ECF No. 4 at 23-24.)

During voir dire, Deputy District Attorney Rogan addressed potential jurors:

The basic facts are that on December 15th, 2009, the defendant entered a Walmart located at 201 North Nellis Avenue – Boulevard here in Las

Vegas, Clark County, Nevada, and stole various electronic items.  He was caught in the act and confessed to a police officer.

(Exh. 22 at 21.)

The prosecutor later had this exchange with a potential juror regarding the juror's personal experiences with law enforcement:

So every time that something was stolen would you call the police?

Yeah, but they had to take it all down to the department and they wouldn't come out no more. So I didn't get no satisfaction, never went nowhere.

Okay. You understand that in this particular case, the defendant was actually caught inside the Walmart?

(Exh. 22 at 70.)

Defense counsel Jenkins raised these improper comments during a bench conference:

Mr. Jenkins: and, Your Honor, one – Mr. Rogan already cited it, but arguing or stating the facts of the case during voir dire –

Mr. Rogan: It's inappropriate.

The Court: Yeah.

Mr. Rogan: It just came up.

The Court: Yeah, it's – it does run afoul of EDCR 7.70.

Mr. Rogan: I'm familiar. It just came up. I apologize.

The Court: Okay, All right.

Mr. Jenkins: We'll make a more full record when we're outside the presence --

(Exh. 22 at 73-74.)

///

13

Next, and before Mr. Jenkins had an opportunity to make a full record of the defense objection, the trial court was prompted to issue a curative instruction:

> Prospective Juror: when we first came in here, did I hear it be said that he was seen with property of Walmart – in the beginning did I hear that correctly?
>
> [district attorney] Ms. Hojjat: And, unfortunately, we're not allowed to discuss –
>
> Prospective Juror: I thought I've heard it like two or three times said.
>
> The Court: Well let me go ahead and clarify this. The situation is the lawyers typically at the early part of the proceedings today, as they did, could give a description of what they think the case is about. But what the lawyers say, just like opening statements or closing statements, that's not evidence, so you haven't received any evidence. So regardless of what somebody may have thought the case or evidence would show, you don't have any evidence to support that one way or the other so there's no evidence has been presented at this point. So what I'm really saying is that if there were any opinions given by counsel as to what they thought the case would show, that's not evidence and really I would tell you you're not to consider that.

(Exh. 22 at 80-81.)

The Nevada Court of Appeals agreed the trial court's curative instruction to potential jurors was sufficient to preserve Morrow's fair trial right:

> The district court found any attempt made by counsel to allege Morrow was deprived of his right to a fair trial based on the prosecutor's comments would have been futile because it gave a curative instruction advising the potential jurors the comments and questions by counsel were not evidence and could not be considered by jurors. Because the record supports the district court's finding and further reveals trial counsel acknowledged the matter was cured during voir dire, we conclude the district court did not err in rejecting this claim. *See Kirksey v. State*, 923 P.2d 1102, 1114 (Nevada 1996) ("An attorney's decision not to raise meritless issues on appeal is not ineffective assistance of counsel.").

(Exh. 71 at 2.)

In light of the curative instruction issued, in which the court specifically admonished potential jurors that comments during voir dire, just like opening and closing arguments, are not evidence, the Court agrees that Morrow has not demonstrated that the Nevada

14

1  Court of Appeal's decision was contrary to or involved an unreasonable application of
2  *Strickland*. *See* 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 1(a).

3      Accordingly, the petition is denied in its entirety.

4  **IV.  CERTIFICATE OF APPEALABILITY**

5      This is a final order adverse to Petitioner.  As such, Rule 11 of the Rules Governing
6  Section 2254 Cases requires this Court to issue or deny a certificate of appealability
7  (COA).  Accordingly, the court has *sua sponte* evaluated the claims within the petition for
8  suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281
9  F.3d 851, 864-65 (9th Cir. 2002).

10     Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner
11  "has made a substantial showing of the denial of a constitutional right." With respect to
12  claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would
13  find the district court's assessment of the constitutional claims debatable or wrong." *Slack*
14  *v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4
15  (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate
16  (1) whether the petition states a valid claim of the denial of a constitutional right and (2)
17  whether the court's procedural ruling was correct. *See id.*

18     Having reviewed its determinations and rulings in adjudicating Morrow's petition,
19  the Court finds that none of those rulings meets the *Slack* standard. The Court therefore
20  declines to issue a certificate of appealability for its resolution of Morrow's petition.

21  **V.  CONCLUSION**

22     The Court notes that the parties made several arguments and cited to several
23  cases not discussed above. The Court has reviewed these arguments and cases and
24  determines that they do not warrant discussion as they do not affect the outcome of the
25  issues before the Court.

26     It is therefore ordered that the petition (ECF No. 4) is denied.

27     It is further ordered that a certificate of appealability is denied.

28

15

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 18th day of August 2020.

MIRANDA M. DU, CHIEF JUDGE
UNITED STATES DISTRICT COURT

16